### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-02405-NRN

LEAANN SCOTT, an individual,

    Plaintiff,

v.

HCA-HEALTHONE, LLC D/B/A PRESBYTERIAN/ST. LUKE'S MEDICAL CENTER, a Colorado limited liability company,

    Defendant.

_____

### SECOND AMENDED COMPLAINT WITH REQUEST FOR JURY TRIAL
_____

COMES NOW, Plaintiff, LeaAnn Scott, by and through her attorneys, Thomas H. Mitchiner, of Mitchiner Law, LLC and Steven L. Murray of Murray Law, LLC, and submits her Second Amended Complaint and Request for Jury Trial against Defendant, HCA-HEALTHONE d/b/a PRESBYTERIAN/ST. LUKE'S MEDICAL CENTER.

### Nature of the Case

This is an employment discrimination case arising from the discriminatory treatment of LeaAnn Scott [Scott], female over forty years old, by her employer, HCA-HEALTHONE d/b/a PRESBYTERIAN/ST. LUKE'S MEDICAL CENTER [PSL]. The discriminatory practices, based on Scott's age, include, but are not limited to discriminating against Scott by: (1) not selecting her for a position for which she was qualified and applied, while selecting persons under 40 years of age, who were less qualified; (2) demoting her to a position with reduced

1

pay; (3) discriminating against her concerning the terms and conditions of her employment, the benefits of her employment; (4) constructively discharging her from employment; and (5) subjecting her to a hostile work environment based on her age.

The discriminatory actions violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et. al.* [ADEA]

## Jurisdiction and Venue

1. Jurisdiction is asserted pursuant to 28 U.S.C. § 1331, and the ADEA, 29 U.S.C. § 626(c)(1).

2. This is an action authorized and instituted pursuant to the ADEA.

3. The claims in issue arose in the State of Colorado.

4. All claims arose in the Judicial District of this Court. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) (c).

## Parties

5. Plaintiff, LeaAnn Scott [Scott], is a female over the age of forty, is a resident of the State of Colorado.

6. Defendant, HCA-HEALTHONE d/b/a PRESBYTERIAN/ST. LUKE'S MEDICAL CENTER. [PSL], is a Colorado limited liability company registered with the Colorado Secretary of State to do business in Colorado.

7. PSL is a hospital.

8. Scott is an employee under the ADEA.

9. PSL is an employer under the ADEA.

## ADMINISTRATIVE PROCEDURES

10. Prior to filing this action, Scott timely, properly and lawfully exhausted all required administrative remedies.

11. Scott filed a timely charge of age discrimination and hostile work environment due to age, in violation of the ADEA, with the United States Equal Employment Opportunity Commission [EEOC]. [EEOC Charge No.: 541-2020-01799].

12. On February 2, 2021, the Buffalo, New York office of the EEOC issued a right to sue letter regarding Scott's ADEA charge.

13. Because the right to sue letter was issued out of the Buffalo, New York office Scott did not receive the right to sue until June 10, 2021.

14. Scott has timely filed this Complaint because she has filed it within 90 days of her receipt of the right to sue letter.

## Background

15. Scott is a Registered Nurse [RN].

16. Scott has worked as a RN for twenty-one and a half years.

17. Prior to the events described in this Complaint, Scott previously worked for PSL, before leaving to work as a travel nurse in 2001.

18. Scott started working for PSL for the second time in June 2003 as a Staff Nurse.

19. In Scott's last position for PSL, she served as Registered Nurse in the Transplant/Complex Surgery Unit [Unit]. The Unit was managed by a Unit Manager.

20. Since 2006, Scott mostly worked on the Unit in a leadership role as a permanent charge nurse.

21. In 2006, Scott's Unit Manager promoted Scott to the position of Permanent Charge Nurse.

22. In 2016, PSL created the Clinical Nurse Coordinator [CNC] position. Scott applied for the position and received it.

23. During her career on the Unit, Scott has been managed by Kimberly Lozano, Jennifer Wheeling and Jordan Dwyer [neé Venteicher], among others.

24. When the Unit was without a Manager, Scott acted as Interim Unit Manager.

25. Scott acted as Interim Manager on two separate occasions.

26. Scott never applied for or wanted the Manager position because she enjoyed her position as Permanent Charge Nurse, the CNC, and working as an educator to new staff and graduates.

27. The most recent manager of the Unit was Jordan Dwyer [Dwyer].

28. Dwyer began working on the Unit on or about April 22, 2018. Ms. Dwyer is a female who is under the age of 40 years old.

29. Prior to Dwyer being hired, Scott worked as the Interim Unit Manager of the Unit.

30. Because Scott had significant experience on the Unit, when other departments, staff and doctors needed issues addressed they would bring the issues to Scott and not to Dwyer.

31. Dwyer did not appreciate employees bringing issues to Scott and not to her.

32. Scott also worked with Tamara Rychok [Rychok]. Rychok is a female who is under the age of 40 years old.

33. Rychok was promoted to the CNC position in May of 2017, while Scott was away on FMLA leave.

34. Rychok has less experience than Scott as a nurse and in the CNC position.

35. Scott also worked with Dana Landa [Landa]. Landa worked as a Staff Nurse, Relief Charge Nurse, and Lead Preceptor.

36. Landa is a female under the age of 40 with less nursing experience and experience with the CNC position than Scott. Ms. Landa had limited leadership experience; in the past she had only worked as the relief charge nurse.

37. Before Dwyer becoming the Unit Manager, Scott primarily received fours or fives out of a scale of five on her performance review.

38. Dwyer rated Ms. Scott as a 4 early in 2018.

39. Dwyer started to target Scott in the summer of 2018.

40. On July 31, 2018, Dwyer gave Scott her first a verbal warning.

41. The warning concerned language allegedly used by Scott in the 2018 review, and her failure to uphold PSL's values in an email to Rychok about scheduling.

42. On March 25, 2019, Dwyer gave Scott a corrective action. The corrective action concerned Scott's alleged failure to be available when at work, leaving meetings early and failing to establish the schedules for the new hires.

43. In addition to the corrective action, Dwyer ~~also~~ placed Scott on a performance improvement plan [PIP].

44. In July of 2019, Dwyer informed the current CNC's that Healthone, PSL's parent company, was restructuring the CNC position for all Denver Hospitals and ~~that~~ all current

CNCs would be required to reapply for the position.

45. Scott later discovered the nurses on the Medical Telemetry Unit at PSL had restructured the CNC position in January of 2019, and they would not be required to reinterview for the CNC positions, even though PSL stated that all CNC's would have to re-apply for their positions..

46. In August of 2019, Scott reapplied and reinterviewed for the CNC position.

47. The interviewers had recommended the interviewees bring with them to the interview anything to support their experiences like a Nursing Portfolio or Letters of Recommendations. Scott brought a full portfolio of documents reflecting her nursing experience to the interview. After Scott's peer interview her coworkers praised her on how well she performed, and commented about how Scott was the core of the Unit and about how much Scott cared about the Unit.

48. On or about August 27, 2019, Dwyer informed Scott she was not selected for the position, a position she had performed successfully for the past three and a half years.

49. Dwyer selected Rychok and Landa for the position, individuals under the age of 40, with less experience and qualifications than Scott.

50. Dwyer hired both Rychok and Landa despite the fact neither had a complete and comprehensive professional nursing portfolio or letters of recommendations.

51. Scott was demoted to a Staff RN position and was also given a reduction in salary.

52. Dwyer informed Scott that one reason why she was not selected is because Dwyer believed she had difficulty in relating to new graduates.

53. Scott believed Dwyer's comment was directed at her age; essentially Dwyer told Scott that she was too old to relate to new graduates.

54. In October 2019, Scott interviewed for a new position with the Medical Center of Aurora, a sister hospital to PSL.

55. The Medical Center of Aurora selected Scott for the position and offered her the position; however, on the same day, Dwyer refused to recommend that Scott be transferred due to her previous corrective action and PIP.

56. Dwyer made this recommendation, despite the fact Scott had completed the corrective action and PIP on September 25, 2019, and according to PSL rules was allowed to transfer.

57. Scott was not selected for the position at the Medical Center of Aurora, because of Dwyer's actions.

58. Rychok did the scheduling for the Unit.

59. Rychok would purposely place, younger, less experienced RN's to be a Relief Charge Nurse instead of Scott.

60. Rychok regularly took months to approve Scott's requests for vacation time but would immediately grant the requests of other staff members.

61. In August 2019, Scott submitted her requested days off for November and December of 2019.

62. Dwyer and Rychok immediately denied her request but did grant the request of a younger male coworker who submitted his request at the same time Scott.

63. This action caused Scott extreme hardship because, she could not plan her

7

requested time off ahead of time.

64. Scott submitted her letter of resignation on December 19, 2019.

65. Scott worked her next shift on December 21, 2019.

66. On December 23, 2019, Dwyer called Scott and left a voicemail telling Scott she did not need to work her final five remaining shifts.

67. Scott did not work her last five shifts on the Unit but was paid for time.

68. On January 2, 2020, Scott was constructively discharged.

69. PSL's actions against Scott were willful discrimination under the ADEA.

## First Claim for Relief
(Age Discrimination – Demotion – 29 U.S.C. § 623)

70. The foregoing allegations are realleged and incorporated by reference.

71. At all times in issue, Scott performed her duties in a satisfactory manner.

72. At all times in issue, Scott did not engage in any conduct warranting the discriminatory adverse actions described herein.

73. PSL discriminated against Scott because of her age by intentionally depriving Scott of her right to be free from age discrimination in the performance, enjoyment, continuation, rights, benefits, and privileges of her employment relationship with the PSL, in violation of 29 U.S.C. § 621.

74. PSL discriminated against Scott because of her age: (a) with respect to her compensation, terms, conditions, or privileges of employment; and/or (b) by limiting, segregating, or classifying Scott in a way, which deprived, or tended to deprive, Scott of employment opportunities, or otherwise adversely affect her status as an employee.

75. PSL engaged in continual, increasing, and intentional age discrimination in taking adverse unlawful employment practices against Scott because of her age.

76. Specifically, PSL demoted Scott to a Staff RN position from the CNC position and decreased her pay.

77. PSL demoted Scott and placed two individuals not of Scott's protected status in the CNC position she previously held and performed in a satisfactory manner.

78. PSL placed persons in the CNC positions who had less experience than Scott.

79. PSL treated Scott differently than similarly situated employees because of her age with respect to the terms and conditions of her employment.

80. PSL acted willfully, with malice or reckless indifference to the rights of Scott.

**Second Claim for Relief**
(Age Discrimination – Failure to Promote – 29 U.S.C. § 623)

81. The foregoing allegations are realleged and incorporated by reference.

82. Scott held the CNC position on the Unit from February 2016 through July 2019.

83. In July 2018, PSL announced it was restructuring the CNC position, and all current CNCs would need to reapply for the position.

84. PSl conducted interviews for the position in early August 2020.

85. PSL requested that people applying for an interviewing for the CNC position bring certain documents with them such as a comprehensive nursing portfolio.

86. Scott, an employee over forty years old, Rychok and Landa, employees under forty years of age, applied for the CNC position.

87. Scott brought with her to the interview a comprehensive nursing portfolio with accomplishments and achievements over her 19-year career. In addition, Scott brought letters of recommendations from physicians and her peers.

88. Rychok and Landa did not bring to the interview a comprehensive nursing portfolio.

89. Scott had more experience as a Staff Nurse, Charge Nurse, and CNC than both Rychok and Landa

90. Dwyer hired Rychok and Landa to work as the CNC's but demoted Scott to an RN Position.

91. Scott also received a reduction in pay.

92. Scott was qualified for the CNC position.

93. Dwyer, Scott's Manager, informed Scott that she did not rehire her for the CNC position because Dwyer thought Scott would have a hard time relating to the new graduates.

94. Scott viewed the above comment to mean Dwyer believed Scott was too old to relate to new graduates who are typically under the age of 40.

95. PSL acted willfully, with malice or reckless indifference to the rights of Scott.

### Third Claim for Relief
(Age Discrimination – Failure to Transfer – 29 U.S.C. § 623)

96. The foregoing allegations are realleged and incorporated by reference.

97. After not receiving the CNC position and continuing to experience age-based harassment Scott applied to transfer to positions outside of PSL.

98. In October 2019, Scott applied for a Staff RN position with The Medical Center of Aurora, PSL's sister hospital.

99. The Medical Center of Aurora offered her the position.

100. Scott ultimately lost the opportunity to work in the Medical Center of Aurora position because Dwyer refused to recommend Scott for the RN position. According to Dwyer, Scott could not transfer because she was on a PIP and had a corrective action.

101. The facts formed the basis of Scott's PIP and corrective action stem from Dwyer's ageism.

102. Moreover, Scott's PIP ended on September 25, 2019, and Dwyer could have recommended her for the transfer.

103. PSL and Dwyer prevented Scott from transferring to the new position because of Scott's age.

104. PSL acted willfully, with malice or reckless indifference to the rights of Scott.

**Fourth Claim for Relief**
(Age Discrimination – Hostile Work Environment)

105. The foregoing allegations are realleged and incorporated by reference.

106. The ADEA prohibits age discrimination and harassment in the form of a hostile work environment, based on age. 29 U.S.C. § 2623.

107. PSL, in consideration of all the facts, in a cumulative manner, intentionally created, tolerated, and perpetuated a hostile and abusive work environment, based upon age, against Scott.

108. PSL's conduct and comments directed at Scott subjected her to materially adverse conduct which was unwelcome and offensive.

109. PSL's conduct and comments directed at Scott subjected her to materially adverse conduct which: (1) was sufficiently severe and/or pervasive as to adversely alter the terms, conditions, and privileges of Scott's employment; (2) created an abusive working environment for Scott, involving discriminatory intimidation, ridicule, and insult, causing her emotional and/or physical harm; and (3) was age based in nature, and/or specifically and solely directed at Scott, because of her age.

110. PSL condoned the age harassment and hostile environment of Scott by refusing to permit Scott to transfer to another position, thereby effectively discharging Scott's from employment.

111. PSL is liable for subjecting Scott to the racially hostile work environment claim because Dwyer was Scott's supervisor and she engaged in the harassment, and PSL denied Scott the promotion, subjected her to a demotion and reduction in pay, denied her the opportunity to transfer, and constructively discharged her from employment.

112. PSL and Dwyer's actions constitute adverse tangible employment actions.

113. PSL is liable to Scott because Dwyer, Scott's supervisor, created and perpetuated the hostile work environment resulting in the adverse tangible employment actions.

114. In addition to, or in the alternative to the contention in the above paragraph, or in the alternative, PSL is liable for subjecting Scott to the age based hostile work environment

claim because Dwyer, Scott's supervisor, was the harasser as described in the above paragraph, and the action did not result in a tangible employment action.

115. In addition to, or in the alternative to the contentions in the above two paragraphs, or in the alternative, PSL is liable for subjecting Scott to the age based hostile work environment claim because Scott was subjected to age based harassment by co-workers and PSL's supervisors and managers knew or should have known of all the materially adverse conduct in issue.

116. PSL failed to: (1) stop the materially adverse conduct in issue; and (2) implement reasonably prompt and appropriate corrective action.

117. Each successive episode of PSL's cumulative conduct against Scott, constituting the hostile work environment, had its predecessors, and the impact of the separate incidents accumulated such that the unlawful work environment created, exceeded the sum of any individual episode.

118. PSL's treatment of Scott constitutes discrimination in the form of an unlawful, hostile work environment, based on age, in violation of 29 U.S.C. § 623.

### Request for Relief

WHEREFORE, Plaintiff, LeaAnn Scott, respectfully prays for a judgment to be entered against the HCA-HEALTHONE d/b/a PRESBYTERIAN/ST. LUKE'S MEDICAL CENTER as follows:

> A. Against the HCA-HEALTHONE d/b/a PRESBYTERIAN/ST. LUKE'S MEDICAL CENTER for back pay, loss of benefits, and all economic benefits associated with Scott's employment, under 29, U.S.C. § 621 *et. al.*, as allowed by law;

B. Against the HCA-HEALTHONE d/b/a PRESBYTERIAN/ST. LUKE'S MEDICAL CENTER for liquidated damages because of PSL's willful and unlawful conduct against Scott under, 29, U.S.C. § 621 *et. al.*, as allowed by law;

C. Against the HCA-HEALTHONE d/b/a PRESBYTERIAN/ST. LUKE'S MEDICAL CENTER for front pay under 29, U.S.C. § 621 *et. al.*, as allowed by law;

D. Against the HCA-HEALTHONE d/b/a PRESBYTERIAN/ST. LUKE'S MEDICAL CENTER for attorney fees and costs available to Scott under 29, U.S.C. § 621 *et. al.*, as allowed by law;

E. Costs, as allowed by law; and

F. To award Scott all other legal and equitable relief, to which Scott is entitled pursuant to any law, that this Court deems just, equitable, and proper.

## JURY TRIAL REQUEST

Pursuant to Fed. R. Civ. P. 38 (a) (b) (c), and all applicable laws providing for a right to trial by jury, Scott seeks a jury trial of all claims and issues in this action.

Respectfully submitted on 24 September 2021 by:

Mitchiner Law, LLC

/s/ Thomas H. Mitchiner
Thomas H. Mitchiner
Mitchiner Law, LLC
1240 S. Parker Rd. Suite 103
Denver, CO 80231
Phone: 720-538-0371
E-mail: tmitchiner@mitchinerlawllc.com

Murray Law, LLC

/s/ Steven Murray
Steven Murray
Murray Law, LLC
3900 Mexico Ave. Suite 300
Denver, CO 80210
Phone: 303-396-9952
E-mail: steven@smurraylaw.com

Attorney for Plaintiff LeaAnn Scott

Address of Plaintiff:

6885 Hyland Hills Street, Castle Pines, CO 80108